**FILED**
**JUL 1 0 2007**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

MICHAEL SINDRAM
6817 Georgia Ave., N.W. #204
Washington, D.C. 20012
        Disabled Veteran/Plaintiff,

v.

CLEMMIE SOLOMON
4200 Connecticut Avenue, N.W.
Washington, D.C. 20008
        UDC V-P Student Affairs/Defendant.

Case: 1:07-cv-01230
Assigned To : Walton, Reggie B.
Assign. Date : 7/10/2007
Description: TRO/PI

\*          \*          \*

## LEAVE TO FILE VERIFIED COMPLAINT

    1. All acts complained of occurred in District of Columbia. Amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00). Constitutional issues subject parties to jurisdiction of this Court as more fully described below.

    2. Plaintiff is a 49-year –old white male Disabled Veteran currently receiving 40% disability compensation from Department of Veterans Affairs. Plaintiff is also receiving Disability Supplemental Security Income from Social Security Administration due to his organic mental disorder. Because of osteoarthritis in both knees Plaintiff's medical restrictions are limited walking and standing. Because of spinal condition Plaintiff cannot sit for periods >1-2 hours. As such, Plaintiff has a mental and physical impairment resulting from his service-connected injuries, and is therefore an individual with a disability protected under **Americans with Disabilities Act (ADA), 42 U.S.C. §§12101-12213**, and specifically under **Title II of ADA**, which governs public services.

    3. Defendant is vice-president for student affairs at University District of Columbia (UDC), "public entity" under **Title II of ADA, 42 U.S.C. §12131(1)**, and as such, is required to ensure that "no qualified individual with a disability shall, on basis of disability, be excluded from participation in or be denied benefits of services, programs, or activities of a public entity." **28 C.F.R. §35.130(a)**. Furthermore, in order to ensure that no qualified disabled individual is excluded from services provided by a public entity, such public entity must:

> *Make reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on basis of disability, unless public entity can demonstrate that making modifications would fundamentally alter nature of service, program, or activity.*
> **28 C.F.R. §35.130(b)(7)**.

    4. Based on a review of administrative record provided by defendant to Plaintiff, it appears there were no modifications made to any UDC procedures to accommodate Plaintiff's mental

1

impairment based on his diagnosed mental disorder and/or physical impairments based on his diagnosed osteoarthritis both knees and spinal condition. Plaintiff has repeatedly filed documentation in support of his mental and physical impairments with defendant over the years, but it appears defendant considered these documents as though submitter was not due special attention required by **Title II of ADA**. Specifically, it appears that defendant assigned Plaintiff's "case" treated Plaintiff as he would any other individual. Defendant set for Plaintiff a different standard as opposed to others similarly situated at UDC, an historically black institution. For example, in a February 23, 2007 letter from defendant, following mediation settlement at Office of Human Rights, defendant took retaliatory action against Plaintiff to ultimately seek Plaintiff's suspension and/or expulsion from UDC. Plaintiff also requested assistance with unusual medical expenses to offset UDC fees for extra-curricular facilities Plaintiff is unable to use. In retaliation for having asserted his constitutionally-guaranteed rights defendant commissioned police to stalk Plaintiff, sent police to deliver defendant's missives to disrupt and interfere with Plaintiff's classroom instruction, and sent subordinates to detain Plaintiff from classroom instruction. Defendant's arbitrary and capricious acts are material breach of contract and anticipatory repudiation of Plaintiff's education objective, to wit: law school. At present defendant continues to deny Plaintiff his entitled requested reasonable public accommodations. Defendant instead has placed Plaintiff in defendant's personal playground via bogus "allegations" to require Plaintiff to attend countless multiple [kangaroo court] "hearings." Defendant makes up "rules" to govern defendant's "proceedings" to unconstitutionally impose draconian sanctions on Plaintiff. In his ministerial capacity defendant continues to abuse his discretion and exceed his jurisdiction. Defendant has now achieved an end unintended by law and in fact having had that intended effect to put Plaintiff on "disciplinary probation." Defendant continues to abridge and deny Plaintiff's requested entitled reasonable public accommodations. Under **28 C.F.R. §35.130(b)(7)**, once Plaintiff made such a request, defendant was obliged to make a finding "demonstrat[ing] that making modifications [requested by Plaintiff] would fundamentally alter nature of service, program, or activity." There is no contemporary evidence in documents provided Plaintiff as part of Plaintiff's wrongful denial of **ADA** reasonable accommodations or "disciplinary probation" of May 24, 2007 that defendant ever made any such determination or even considered Plaintiff's request as required by **ADA Title II** implementing regulations. Rather, it appears defendant instead required his subordinates under doctrine of *respondeat superior* to have additional correspondence sent to Plaintiff as a precautionary measure to insulate defendant from further liability, not to assist Plaintiff with entitled requested **ADA** reasonable public accommodations.

    5. Accordingly, under **28 C.F.R. §35.130(b)(7)**, Plaintiff does not have to allege disparate treatment in order to maintain a reasonable accommodation claim. **McGary v. City of Portland**, 386 F.ed 1259, 1266 (9th Cir. 2004) *see also* **Henrietta D. v. Bloomberg**, 331 F.3d 261, 276-77 (2d Cir. 2003)("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact."), *cert. denied*, 541 U.S. 936 (2004); **Dunlap v. Ass'n of Bay Area Gov'ts**, 966 F.Supp. 962, 965 (N.D. Cal. 1998)([T]he ADA not only protects against disparate treatment, it also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'"). Once claim for reasonable accommodation has been made, burden shifts to defendant to prove that such accommodation would "fundamentally alter" nature of UDC "requires a more fact-intensive inquiry than is appropriate on a motion to dismiss." **Nelson v. Milwaukee County**, 2006 WL 290510, 7(E.D. Wis. 2006); *see also* **Crowder v. Kitagawa**, 81 F.3d 1480, 1485-86 (9th Cir. 1996)(stating that

"determination of what constitutes reasonable accommodations is highly fact-specific requiring case-by-case inquire"); **_Wong v. Regents of Univ. of Cal._**, 192 F.3d 807, 818 (9th Cir. 1999)(explaining that question of what constitutes a reasonable accommodation "requires a fact-specific, individualized analysis of disabled individual's circumstances and accommodations" requested).

6. As discussed herein, Plaintiff is a member of a protected class under **Title II of ADA**. In its past "ruling" of February 28, 2007 defendant acknowledges "denial" of law school admission request for entitled reasonable accommodations to achieve an end unintended by law and in fact having had that intended effect to refuse Plaintiff his **ADA** reasonable accommodations and to deny Plaintiff his formal legal education. Available UDC record does not explain whether defendant made its required determination under **28 C.F.R. §35.130(b)(7)** to show that allowing UDC to review Plaintiff's requests under an **ADA** reasonable accommodation would "fundamentally alter nature of service, program, or activity." At a fundamental level, it is unclear how allowing Plaintiff to attend law school (Plaintiff currently maintains 4.000 Grade point Average on Dean's List) and reimburse Plaintiff for overcharged fees would fundamentally alter nature of UDC's administration, particularly in light of UDC's "Vision Statement," which reads:

> *University of District of Columbia strives to prepare our students to be well-educated, skillful, autonomous, service oriented, culturally enlightened, and technologically oriented citizens who are prepared to live and work in a multi-ethnic, global, and technologically-driven society. The University also strives to create an environment that will encourage maximum development of its students.*

7. In addition to denying Plaintiff his requested entitled reasonable accommodations, defendant continues reign of terror to make unwarranted and offensive contact with Plaintiff to threaten, harass, and intimidate Plaintiff while on campus and at Plaintiff's home. Defendant continues to impose draconian sanctions on Plaintiff to exacerbate Plaintiff's medical condition and pain. Defendant continues to abridge and deny Plaintiff's preferred **United States Constitution Amendment I** rights to *"freedom of speech"* and *"to petition Government for a redress of grievances"* by way of ongoing threats, intimidation, and harassment at Wilson Building D.C. Council oversight hearing on UDC of February 7, 2007, *et al.*, wherein Plaintiff was to testify before Committee On Whole. Defendant believes to be a law unto himself and refuses rule of law, accountability, and/or transparency to irreparably harm Plaintiff. Defendant's unlawful acts continue to work reputational and economic harms and injuries against Plaintiff.

8. As a direct and proximate result of defendant's wanton and willful rancorous malicious misconduct and total disregard of Plaintiff's constitutionally-guaranteed rights, Plaintiff sustained physical injury, mental trauma, psychological anguish, and loss of enjoyment of life.

WHEREFORE, Disabled Veteran/Plaintiff, Michael Sindram, *pro-se*, respectfully requests that this Honorable Court find defendant Clemmie Solomon liable for all injuries, damages, and violations suffered by plaintiff, and that judgment be entered against defendant Clemmie Solomon jointly, severally, collectively, and individually, as follows:

1. Compensatory and General damages in amount of Seven Hundred Fifty Thousand Dollars ($750,000.00);

2. Consequential damages in amount of Five Hundred Thousand Dollars ($500,000.00);

3. Punitive damages in amount of Nine Hundred Thousand Dollars ($900,000.00);

4. Costs, disbursements, and Reasonable Award of Expenses for Plaintiff to vigorously prosecute this weighty meritorious cause of action in amount of Forty-Four Thousand Dollars ($44,000.00);

5. Such other and further relief as to this Court appears just and proper.

**In God we trust:**
*Michael Sindram*
Michael Sindram, Plaintiff, *Pro-Se*
6817 Georgia Ave., N.W. #204
Washington, D.C. 20012
(202)722-6281


### JURY DEMAND

Jury Demand made as to all issues herein as guaranteed by **United States Constitution Amendment VII**.

*Michael Sindram*
Michael Sindram


*Make it **your** aim to do what is right, not what is evil, so
that **you** may live. Hate what is evil, love what is right, and
see that* **justice** *prevails in the* **courts…let** *justice flow like
a stream, and* **righteouness** *like a river that never goes dry.*
**Amos 5;14a, 15a, 24 (TEV)**

*When rights of one are violated rights of **all** are endangered!
Injustice anywhere is a threat to justice **everywhere**! Not to
judge a man by color of his skin but rather by content of his
character.*
**Martin Luther King, Jr.**

*Do for others what **you** want them to do for **you**!*
**Matthew 7:12a (TEV)**